Robert **SPLITT** and Virginia Splitt, **Plaintiffs-Appellants,**

v.

The **DELTONA CORPORATION,** **Defendant-Appellee.**

No.  80–5209.

United States Court of Appeals, Fifth Circuit.*
Unit  B

Dec.  7,  1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96-452—October 14, 1980.

Peeples, Earl, Smith, Moore & Blank, Richard M. Goldstein, Miami, Fla., for plaintiffs-appellants.

Robert L. Wiggins, Jr., Birmingham, Ala., William O. Boyd, Mount Dora, Fla., for defendant-appellee.

Before FRANK M. JOHNSON, Jr., HENDERSON and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge.

The plaintiffs (Splitts) claimed breach of a land sale contract and fraud in district court. Defendant (Deltona) alleged that intervening environmental legislation had made performance impossible. The jury found a breach of contract but rejected the plaintiffs' claim for fraud and the defendant's affirmative defense and awarded $36,000 plus interest in compensatory damages and $100,000 in punitive damages. On a motion for a judgment notwithstanding the verdict the district judge set aside the award of punitive damages as not in accordance with state law and unsupported by the evidence. Plaintiffs appeal and we affirm.

Initially, Deltona was designated on appeal as appellant-cross appellee; however, its appeal was dismissed by this court for failure to comply with Federal Rule of Appellate Procedure 4(a)(4). Since continued reference to Deltona as appellant would be confusing, the parties will be referred to as plaintiffs and defendant.

## I.

The Splitts contracted in August, 1967 for a residential lot in a Deltona development. The development required extensive dredge and fill operations; delivery was promised by March, 1973. The Splitts completed performance by making their final payment in January, 1973, having paid Deltona $11,746.34. In April, 1973, Deltona asked the Splitts if they were interested in selling their property; the property was then worth $35,000. The Splitts responded affirmatively and added that they had not yet received their deed. The plaintiffs received no answer from Deltona. The defendant did respond to a March, 1974 letter from the Splitts and indicated that it was unable to perform by the date promised. In July, 1974 the plaintiffs requested further information as to the reasons for nonperformance. Defendant replied in October, 1974 that it was under a cease and desist order issued by the United States Corp of Engineers. Plaintiffs filed suit in 1975. Permission to continue the work was granted by the Corp of Engineers to the defendant in April, 1976. Dredge and fill operations were completed in December, 1977. Water mains were installed and the project completed in mid-1978. As of the date of trial, the lot was valued at $67,500.

The breach is not contested. In essence, defendant argues that the delays were caused by unexpected federal and state requirements. Plaintiffs contend that the delays were to be expected, and that defendant's failure to anticipate these requirements and to communicate with plaintiffs constituted a separate and independent tort which would support a claim for punitive damages in the absence of fraud.

## II.

Plaintiffs first assert that the right to move for a judgment notwithstanding the verdict was not preserved by a motion for

directed verdict. Deltona failed to specifically move for a directed verdict as to punitive damages on the contract claim.

THE COURT: Any motions to be made on behalf of the Defendant at the close of all the evidence?

MR. GOLDSTEIN [Counsel for Deltona]: Yes, your Honor. We would renew at this time, or if I might save time, readopt our prior motion for directed verdict incorporating the same basis we argued the last time, that there has been no testimony or evidence that Deltona in August of '67, 1967, knew that it couldn't perform and there was no evidence of any kind from anybody that it didn't— that it intended not to perform, had a present intention not to perform or a positive intention not to perform.

In fact, all of the testimony that has been submitted has shown exactly the opposite, that Deltona intended to perform and did perform and that its alleged non-disclosure of the dredge and fill permit is not material because at that time the obtainment of the permit in August of '67 was a matter of course, and it was not until a later period of time that it became much more difficult, and we request the Court to direct a verdict.

THE COURT: The Defendant's motion for directed verdict made at the close of all of the evidence will be denied.

Record at 372–73.

The previous motion for a directed verdict referred to by counsel had been specifically limited to the fraud claim. Although defendant's argument in support of this motion was directed to the fraud claim, the judge's final comment may be interpreted as an acceptance of the motion as a general motion for a directed verdict covering all claims.

The motion for a directed verdict is a required predicate for a motion for a judgment notwithstanding the verdict. Fed.R. Civ.P. 50(b). This court has, however, applied the rule liberally, in light of its purpose.

> The reasons behind the rule are sound. For example, a litigant may not gamble on a jury's verdict and then later question the sufficiency of the evidence on appeal.... Similarly, the litigant who has not moved for a directed verdict in the trial court must have been of the view that the evidence made a case for the jury; he should not be permitted on appeal to impute error to the trial judge for sharing that view.

*Little v. Bankers Life & Casualty Co.*, 426 F.2d 509, 511 (5th Cir. 1970), quoted in support of the general rule at C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2536, p. 594. A reason for the rule overlapping those given by us above as examples is to avoid making a trap of the motion for judgment notwithstanding the verdict, either at the trial stage or on appeal. When a claimed deficiency in the evidence is called to the attention of the trial judge and of counsel before the jury has commenced deliberations, counsel still may do whatever can be done to mend his case. But if the court and counsel learn of such a claim for the first time after verdict, both are ambushed and nothing can be done except by way of a complete new trial. It is contrary to the spirit of our procedures to permit counsel to be sandbagged by such tactics or the trial court to be so put in error.

*Quinn v. Southwest Wood Products, Inc.*, 597 F.2d 1018, 1024–25 (5th Cir. 1979).

■ Counsel for plaintiffs was not ambushed. Deltona had argued strenuously against a jury instruction that would permit a finding of punitive damages on the contract claim. In fact, the comment of the trial judge at the conclusion of the argument seems to indicate he believed a proper predicate for a judgment notwithstanding the verdict had been laid. "Well, I'm going to go ahead and give the charge. If I am wrong, you can move ten days after trial." Record at 286. The trial judge was apparently referring to the ten-day rule in Fed.R. Civ.Proc. 50(b). Since all parties had notice of the basis for Deltona's concern, Rule 50's purpose has been served. We find that the right of Deltona to make the motion for a

judgment notwithstanding the verdict was properly preserved.

### III.

We move then to the substantive issue raised by the appeal. Did the trial judge err in granting the motion notwithstanding the verdict as to punitive damages? The general common law rule is that punitive damages are not to be awarded in a contract action.[1] As with most rules of law, this one is subject to exception. "As a consequence, in those situations in which the defendant's breach of contract amounts at the same time to a tort, as, for example, in the case of a violation of duty by a public service company, it is sometimes held that punitive damages may be recovered if the breach is willful or wanton, even though the action is brought in contract." J. Murray, *Murray on Contracts* § 231 (rev. ed. 1965).

The law in Florida is not significantly different from that stated by the authorities. The general rule that no punitive damages are to be awarded in a contract action has long been the Florida rule, *Griffith v. Shamrock Village*, 94 So.2d 854, 858 (Fla.1957), and continues to be. *American International Land Corporation v. Hanna*, 323 So.2d 567, 570 n.10 (Fla.1976).

If the act amounts to an intentional tort, clearly punitive damages are permitted. Like most jurisdictions Florida allows such damages even if the conduct is negligent. In *Griffith*, plaintiff "alleged gross negligence of the defendant in failing to deliver a telephone message to plaintiff, who was at that time a tenant of the defendant." *Id.* at 855. At the conclusion of the evidence and prior to the submission of the case to the jury, the trial judge granted a motion to dismiss the claims for punitive damages. The Florida Supreme Court held that this was error. The question of punitive damages was one for the jury to decide. The court prefaced its discussion of

punitive damages with a one-sentence paragraph: "The complaint on which this case was tried sounds in tort, not in contract." 94 So.2d at 858.

The breach of a duty is the essence of both contract breaches and acts of negligence. The duties involved in negligence are raised by law and social policy and owed to an entire class of persons. Contractual duties are created by the contract terms and owed to the parties thereto. The distinction could not be better expressed than by the master.

> Where a physician has contracted to treat a family for a year, and refuses to attend when sent for, the cause of action has been held to be for breach of contract only, since the law recognizes no obligation upon a doctor to come when he is called for, in the absence of such a promise. But if he does attend, and renders his services negligently, he is liable in tort, even in the absence of a contract, because he is regarded as having assumed the duty, and he is required by law to exercise proper care as to everyone whom he treats, even though he does so gratuitously.

W. Prosser, *Law of Torts* § 92 (4th ed. 1971) (footnotes omitted).

The distinction thus has been treated as one of non-feasance and misfeasance. The former may be remedied in contract, the latter in tort. The rule that non-feasance has a remedy only in contracts admits some exceptions, as when one has a duty to serve all comers or where a relationship between parties gives rise to an affirmative duty. The public service company is Murray's example. The relationship of the innkeeper and guests in *Griffith* may also be an example. Defendant innkeeper may have contracted expressly or by implication

> to accept telephone calls and messages for its tenants and if the tenants were not in that a message would be placed in the tenants' box in the office. While defendant denied that it contracted, ei-

---

1. J. Murray, *Murray on Contracts* § 231 (rev. ed.1965); W. Prosser, *The Law of Torts* 9-14

(4th ed. 1971).

ther orally or in writing, to render such a service, it is clear to us that it had assumed such a duty to plaintiff.

94 So.2d at 858. Failure to perform that duty may have constituted a·breach of contract had the existence of a contract been proved. Such proof was unnecessary since the conduct of the innkeeper also constituted a negligent breach of the duty of the innkeeper arising from his relationship with his guests. Thus if the defendant's act was sufficiently blameworthy, punitive damages could be awarded.

### IV.

■ Plaintiffs have attempted to shape a structure which might support their punitive damage claim. The structure is straw-like and blows away under the stiff winds of judicial scrutiny. The Splitts' original attack was legally sound. Facts which alleged both the breach and the fraud were pled, but serious problems of proof weakened the fraud claim. Plaintiffs could not establish that when the contract was formed Deltona did not intend to perform on time. Thus, fraud could not be established under Florida law.[2] Cognizant of the general rule that punitive damages are not available in contract actions, plaintiffs "sought punitive damages in the absence of fraud for an intentional wrong, abuse or gross negligence under the standard of *Griffith v. Shamrock Village, supra.*" Brief of Plaintiffs-Appellees 26. Since *Griffith* is the cornerstone of plaintiffs' punitive damage structure, it is necessary to explore the "standard" it establishes.

Plaintiff's fourth question relates to the court's dismissing that part of his complaint pertaining to punitive damages.

Plaintiff contends that the defendant was guilty of an entire want of care in failing to deliver the telephone message and in advising the operator that he had moved and left no forwarding address. He says this amounts to gross negligence.

Plaintiff's evidence shows and defendant in its evidence admits that it undertook to accept telephone calls and messages for its tenants and if the tenants were not in that a message would be placed in the tenants' box in the office. While defendant denied that it contracted, either orally or in writing, to render such a service, it is clear to us that it had assumed such a duty to plaintiff.

The complaint on which this case was tried sounds in tort, not in contract.

The general rule is that punitive damages are not recoverable for breach of contract, irrespective of the motive of defendant. But where the acts constituting a breach of contract also amount to a cause of action in tort there may be a recovery of exemplary damages upon proper allegations and proof. In order to permit a recovery, however, the breach must be attended by some intentional wrong, insult, abuse or gross negligence which amounts to an independent tort. 25 C.J.S. Damages § 120, pp. 716–717.

In the case of *City of Sebring v. Avant*, 1928, 95 Fla. 960, 117 So. 383 and other related cases this Court has defined gross negligence as the want of slight care.

This Court has held that allowance of punitive damages is dependent on a showing of malice, moral turpitude, wantonness or outrageousness of tort. *Dr. P. Phillips & Sons, Inc., v. Kilgore*, 1943, 152 Fla. 578, 12 So.2d 465; *Ross v. Gore*, Fla.1950, 48 So.2d 412.

Plaintiff did not allege nor prove that defendant acted or failed to act from malice or wilfully. He argues that malice is imputed to defendant because of the entire want of care or attention to the implied duty which defendant owed to plaintiff.

In *Kirksey v. Jernigan*, Fla.1950, 45 So.2d 188, 17 A.L.R.2d 766 this Court held that punitive damages were allowable for and that malice could be imputed from the entire want of care or attention to duty, or great indifference to the persons,

---

**2.** Misrepresentation as to a future promise must include a present intent not to perform.

*Bernard Marko and Ass., Inc. v. Steele*, 230 So.2d 42, 44 (Fla. 3d DCA 1970).

property or rights of others. This is consistent with the theory that punitive damages are allowed as a deterrent to commission by others of similar offenses. The holding in the *Kirksey* case was recognized in the later case of *Crane v. Loftin*, Fla.1954, 70 So.2d 574.

Since the trial judge allowed the claim for punitive damages to remain in the complaint until after all evidence had been submitted at the trial, it seems to us that he reasoned as we have here that punitive damages can be recovered in actions such as this and that malice may be imputed to defendant from gross negligence, i. e., a want of slight care.

It further follows that the trial judge must have concluded that as a matter of law the proof submitted in this case would not support an award for punitive damages. We cannot agree.

There was evidence on which the jury could have found that there was an entire want of care or a want of slight care or attention by defendant to the duty it had assumed toward plaintiff. From this the jury could have imputed malice to the defendant. The evidence could have supported a verdict for punitive damages.

Inasmuch as it was not clear as a matter of law that an award for punitive damages could not be allowed to stand, if rendered by the jury, the court should have instructed the jury thereon and submitted the matter to it for determination. Whether or not the elements are present to warrant it is for the jury to determine in the light of all the evidence presented to it.

*Griffith v. Shamrock Village*, 94 So.2d 854, 857–58 (Fla.1957).

Careful examination of the court's opinion reveals a traditional punitive damage analysis. Griffith had suffered a wrong for which he could not be fully righted by compensatory damages. The court found that the question of the appropriateness of punitive damages was for the jury because the actions of the defendant breached a duty to the plaintiff and thus constituted the tort of negligence. The court went on, as it must since more than a tort is required for punitive damages, to find that the malicious state of mind deserving of punishment may be "imputed to defendant from gross negligence, i. e., a want of slight care." *Id.*

■ *Griffith* requires a complaint sounding in tort. The instant complaint makes tortious noises, but it sings a fraudulent and deceitful song. The jury rejected that melody. A careful examination of the complaint reveals no other tortious strains.

Like a persistent neophyte pianist, plaintiffs attempt to strike a negligent chord. Although acknowledging that no other tort is separately pled, plaintiffs insist that they deserve punitive damages because of Deltona's want of slight care. If the plaintiffs mean to say that a flagrant breach of contract will support punitive damages, the law of Florida is squarely against them. "Thus, although Hanna's contract was perhaps flagrantly breached, the legal elements of tortious fraud and deceit are wholly absent from his complaint." *American International Land Corporation v. Hanna*, 323 So.2d 567, 570 (Fla.1975).

We are left then with traditional negligence. To find negligence a duty must be breached. In *Griffith* it was the duty arising from the relationship of the parties as innkeeper/guest. What duty did Deltona breach? Plaintiffs respond that it was the duty to complete performance specified in the contract: the duty to perform on time and advise plaintiffs when that became impossible. Under plaintiffs' theory every breach of contract would be an act of negligence and the general rule of punitive damages distinguishing tort and contract would be meaningless. Plaintiffs insist that a breach of contract with an evil mind is as deserving of punitive judicial response as is a breach of a duty under tort law. Such a rule might be good law, but it is not the general common law, W. Prosser, *Law of Torts* ch. 16 (4th ed. 1971), and more important it is not the law of Florida. "We approve and reiterate the rule—... that punitive damages are not recoverable for a breach of contract." *American International Land Corporation v. Hanna*, 323 So.2d 567, 570 n.10.

In short, the Splitts can point to no "intentional, insult, abuse or gross negligence which amounts to an independent tort." *Griffith v. Shamrock Village*, 94 So.2d 854, 858 (Fla.1957). It is clear from an examination of the record that the trial judge gave instructions regarding punitive damages in the absence of fraud with hesitation and with indications that post-trial motions would be allowed. After the dust had settled and an opportunity to examine the complex state of the law had occurred, the district judge found the punitive damages not in accordance with the law and unsupported by the evidence. After careful consideration of the same law and evidence, we agree and

AFFIRM.