**TIDEWATER BEVERAGE SERVICES, INC., Plaintiff,**

v.

**COCA COLA COMPANY, INC., Defendant.**

Civ. A. 2:95cv382.

United States District Court, E.D. Virginia, Norfolk Division.

Dec. 6, 1995.

Barry Randolph Koch, McCardell, Inman, Benson, Strickler & Koch, Virginia Beach, VA, for Plaintiff.

Robert W. McFarland, McGuire, Woods, Battle & Boothe, Norfolk, VA, for Defendant.

## OPINION

REBECCA BEACH SMITH, District Judge.

This matter comes before the Court on Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff, Tidewater Beverage Services, Inc. ("Tidewater"), originally filed this action on April 6, 1995, in the Virginia Beach Circuit Court. Defendant, Coca–Cola Co., Inc. ("Coca–Cola"), removed the case to this Court on April 27, 1995. Jurisdiction is based on diversity of citizenship. Plaintiff filed an amended complaint on August 21, 1995, to which Defendant submitted a Motion to Dismiss. A hearing on the Motion to Dismiss was held on November 27, 1995.

### I. PLAINTIFF'S FACTUAL ALLEGATIONS

Tidewater is in the business of servicing and installing beverage fountain equipment. Prior to the Summer of 1993, service and installation work for Coca–Cola in this area was performed by three separate businesses, including Tidewater. In the Summer of 1993, however, one of those firms, Minute Man Co., ceased operations. After Minute Man Co. went out of business, Coca–Cola found that it could not meet the needs of its customers. As a result, in July, 1993, representatives of Coca–Cola met with representatives of Tidewater for the purpose of obtaining an agreement whereby Tidewater would become the "primary" area installer of fountain equipment for Coca–Cola.

This new arrangement would place greater demands upon Tidewater. Coca–Cola, therefore, made the expansion of Tidewater's facilities a prerequisite to Tidewater gaining the extra work from Coca–Cola. In consideration for this expansion, Coca–Cola promised that Tidewater would be the primary area installer and agent of Coca–Cola until the year 2000.

Tidewater was concerned that Coca–Cola might, in the future, cease using outside firms for its service work, and instead have

their local bottler perform this function. Tidewater specifically asked the representatives of Coca–Cola present at the initial meeting in July, 1993, whether Coca–Cola intended to allow their local bottler to perform service and installation work. The Coca–Cola representatives said that there were no plans at that time to have local bottlers undertake service work. They said Tidewater would have increased business from Coca–Cola until the year 2000, and that even if a change did occur, the local bottler would perform at most 10% of Coca–Cola's service work. The agreement between the parties was never memorialized in writing.

In reliance upon these representations, Tidewater purchased additional equipment and made the additional capital expenditures requested by Coca–Cola. These expenditures totalled $333,570.00, and were only justified by the increased business from Coca–Cola. Because of the new business from Coca–Cola, Tidewater's 1993 revenues increased 59.37% over the previous year. A significant increase occurred in 1994 as well. The increased profits in 1993 and 1994, however, did not offset the cost of the capital investments. In August, 1994, Coca–Cola informed Tidewater that it was immediately entering the fountain service business and would be performing all of its service work by the end of 1994. This in fact occurred.

Contrary to Coca–Cola's representations in July, 1993, it actually had plans at that time to use the local bottler for all its service work beginning in 1995. Defendant intentionally misrepresented this fact to entice Plaintiff to undertake the expansion necessary to meet the demands of Coca–Cola in the Summer of 1993. During the July, 1993, meeting, Defendant's representatives knew that Coca–Cola had already decided to use local bottlers for service work within the immediate future. In fact, at the time Defendant's representatives told Plaintiff that there were no plans to have local bottlers perform service work, planning was already under way for the local bottler to undertake such work.

## II. DEFENDANT'S MOTION TO DISMISS

### A. Standard of Review

When deciding whether to grant a motion to dismiss pursuant to Rule 12(b)(6) for fail-ure to state a claim upon which relief may be granted, the factual allegations in the plaintiff's complaint must be accepted as true. *See, e.g., Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). A Rule 12(b)(6) motion should only be granted "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). When deciding a Rule 12(b)(6) motion, a court should only consider the pleadings, disregarding affidavits or other materials. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### B. Analysis

Plaintiff's amended complaint states two separate causes of action, breach of contract and fraud. Defendant's Motion to Dismiss will be addressed separately as to each of these counts. Plaintiff's claim for punitive damages will be addressed following this discussion.

#### 1. breach of contract

Plaintiff alleges in its amended complaint that in July, 1993, the parties entered into an oral contract wherein Plaintiff promised to expand its operations to meet Defendant's needs in exchange for Defendant's promise to use Plaintiff as Defendant's primary fountain installer until the year 2000. In support of its Motion to Dismiss this count, Defendant argues that Plaintiff's breach of contract claim is barred by the statute of frauds and that the contract was not supported by adequate consideration on Plaintiff's part.

Under section 11–2(8) of the Virginia Code, an agreement which cannot be performed within one year is unenforceable unless it is in writing and signed by the party to be charged. It is undisputed that the alleged contract was not in writing. Furthermore, according to Plaintiff's allegations, the contract was to extend until the year 2000. It would appear, therefore, that Plaintiff's

breach of contract claim is barred by the statute of frauds.

In certain cases, however, equity may estop a person from asserting the statute of frauds as a defense to a breach of contract claim. Virginia has long recognized that the doctrine of equitable estoppel may preclude a statute of frauds defense. *See T ... v. T ...*, 216 Va. 867, 872–73, 224 S.E.2d 148 (1976); *Lance J. Marchiafava, Inc. v. Haft,* 777 F.2d 942, 945 (4th Cir.1985); *Nargi v. CaMac Corp.,* 820 F.Supp. 253, 256 (W.D.Va.1992). At common law, a party may assert equitable estoppel against a statute of frauds defense, even in the absence of actual fraud, if he can prove "that the person to be estopped has misled another to his prejudice ... or that the innocent party acted in reliance upon the conduct or misstatement by the person to be estopped." *T ...*, 216 Va. at 872–73, 224 S.E.2d 148 (citation omitted). Absent a showing of fraud or deception, four elements must be met to establish equitable estoppel: (1) a representation; (2) reliance; (3) a change of position; and (4) detriment. *Id.,* 216 Va. at 873, 224 S.E.2d 148.

Taking Plaintiff's allegations as true, and viewing them in the light most favorable to Plaintiff, it is clear that equitable estoppel precludes Defendant's statute of frauds defense. Defendant misrepresented to Plaintiff that it had no plans in July, 1993, to take its service work in-house. In reliance upon this misrepresentation, Plaintiff spent over $300,-000.00 on capital improvements to meet Coca–Cola's expected needs. In August, 1994, when Defendant began using its local bottler to perform its service work rather than using outside firms, Plaintiff was left with equipment and facilities which it no longer needed and which it could not pay-off. Plaintiff's amended complaint establishes the necessary four elements for the application of equitable estoppel. Defendant's statute of frauds defense, therefore, is not a bar Plaintiff's breach of contract action, at least at this stage of the litigation.

Defendant next argues that Plaintiff's breach of contract action cannot go forward because Defendant did not receive the consideration necessary for there to be an enforceable agreement. Basically, Defendant argues that it received nothing from its July, 1993, deal with Plaintiff. This argument is without merit. According to Plaintiff's amended complaint, one of the firms which Coca–Cola relied upon to provide service work went out of business in the Summer of 1993. After this closure, Coca–Cola found itself unable to satisfy its customer's demands. Coca–Cola needed Plaintiff or another firm to expand its operations in order to service more Coca–Cola customers. Without Plaintiff's expansion, Coca–Cola would have had to perform the service work itself or seek-out another company to meet its needs. Clearly, Defendant received a benefit from Plaintiff's expansion. Defendant was unable to meet customer demands prior to the deal with Plaintiff, and it was able to do so after the deal. Plaintiff, therefore, provided Defendant with valuable consideration.

### 2. fraud

In addition to its breach of contract claim, Plaintiff also asserts a cause of action for common law fraud. In its Motion to Dismiss, Defendant raises three arguments against Plaintiff's fraud count: (1) that it was not pled with particularity; (2) that Plaintiff failed to allege a misrepresentation as to a past or present fact; and (3) that Plaintiff's purely economic losses are not recoverable in tort.

First, Defendant argues that Plaintiff's amended complaint does not satisfy the requirement that a claim of fraud be pled with particularity. *See* Fed.R.Civ.P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). To adequately plead the "circumstances constituting fraud," the plaintiff must state "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1297 at 590.

In this case, Plaintiff states that the misrepresentation was made by the authorized Coca–Cola representatives present during the initial meeting between Coca–Cola and Tidewater in July, 1993. Plaintiff alleg-

es that these agents of Coca–Cola falsely represented that Coca–Cola did not at that time have plans to switch its service and installation work to the local bottler. Plaintiff further alleges that Defendant's agents made this misrepresentation to entice Plaintiff into expanding its operations. Although Plaintiff does not state the names of the Coca–Cola representatives present at the meeting, the amended complaint does provide Defendant with sufficient information so that it may determine who made the alleged misrepresentations. Plaintiff, therefore, has satisfied the requirements of Rule 9(b).

■ Next, Defendant argues that Plaintiff's fraud count must fail because Plaintiff does not allege that Defendant misrepresented a past or present fact, only that Defendant failed to fulfill its promise to continue using Plaintiff's services. Basically, Defendant argues that Plaintiff is attempting to state a contract cause of action as a tort.

■ Under Virginia common law, the elements of fraud are: "a false representation of a material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage to the misled party." *Elliott v. Shore Stop, Inc.*, 238 Va. 237, 244, 384 S.E.2d 752 (1989). The plaintiff must allege a misrepresentation of past or present facts, not "unfulfilled promises or statements about future events." *Id.; see also Soble v. Herman,* 175 Va. 489, 500, 9 S.E.2d 459 (1940). Citing this last rule, Defendant argues that Plaintiff's amended complaint simply alleges that Defendant failed to fulfill its promise to retain Plaintiff's services. Defendant argues that Plaintiff failed to allege a misrepresentation as to a past or present fact.

In making this argument, however, Defendant ignores one important allegation. Plaintiff alleges that during the July, 1993, meeting between the parties, Plaintiff's agents specifically asked Defendant's agents whether Coca–Cola, at that time, had plans to switch its service operations to the local bottler. Defendant's agents responded, "clearly and unequivocally," that Coca–Cola did not have plans to make that switch. Plaintiff further alleges that, in fact, Coca–Cola had plans in July, 1993, to take its

service work in-house, and that Defendant willfully misrepresented this fact to Plaintiff. This alleged misrepresentation relates to a past or present fact, i.e. the fact that Coca–Cola had plans in July, 1993, to switch its service work to the local bottler. *See Elliott,* 238 Va. at 245, 384 S.E.2d 752 (holding that a misrepresentation as to a party's present intention can be the basis of an action in tort for fraud); *Colonial Ford Truck Sales, Inc. v. Schneider,* 228 Va. 671, 677, 325 S.E.2d 91 (1985) (same). The alleged misrepresentation is not simply a promise to do something in the future; it is, instead, a deliberate misstatement of an existing fact related to Defendant's present intentions.

■ Finally, Defendant argues that Plaintiff cannot recover purely economic losses in a tort action for fraud. In support of this argument, Defendant cites *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.,* 236 Va. 419, 374 S.E.2d 55 (1988). In *Sensenbrenner,* the Virginia Supreme Court held that a home purchaser could not recover in tort against a builder and an architect for damages to an indoor pool and the foundation of a house because those damages were economic losses to real property resulting from defects in improvements to that property made by the defendants, rather than damages for personal injuries or injuries to separate property. *Id.,* 236 Va. at 425, 374 S.E.2d 55. The court stated the economic loss rule this way:

> The law of torts is well equipped to offer redress for losses suffered by reason of a 'breach of some duty imposed by law to protect the broad interests of social policy.' Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.

*Id.* (citation omitted). In other words, if the defendant breaches a duty owned to the plaintiff only through a contractual agreement, the plaintiff may not recover purely

economic losses in a related tort action against the defendant.

The other supporting case cited by Defendant, *City of Richmond, Va. v. Madison Management Group, Inc.,* 918 F.2d 438 (4th Cir.1990), shows that Defendant's argument on this point must fail. In *Madison,* the plaintiff sued the defendant in contract and tort for selling defective pipe. The defendant appealed a jury award of damages on the plaintiff's fraud count, compensating the plaintiff for the cost of repairing the pipe. *Id.,* 918 F.2d at 444. The defendant cited *Sensenbrenner,* arguing that the plaintiff could not recover this economic loss. The Fourth Circuit discussed the different duties imposed by the law of contract and the law of tort. The law of contract requires a person to abide by his promises; the law of tort imposes a separate duty, "i.e., the duty not to commit fraud." *Id.,* 918 F.2d at 447. Because the defendant had breached both a contractual duty and a legal duty imposed by tort law, the court held that the defendant was "not entitled to the protection of the economic loss rule, which protects only those defendants who have breached only contractual duties." *Id.* Like the defendant in *Madison,* Coca–Cola, in this case, is alleged to have breached both its contractual duties to Tidewater and its duty under the law to not commit fraud. Therefore, as in *Madison,* Defendant is not entitled to the protection of the economic loss rule.

### 3. *punitive damages*

█ Plaintiff prays for $1,000,000.00 in compensatory damages and $3,000,000.00 in punitive damages. Defendant argues that Plaintiff is not entitled to punitive damages, and that if Plaintiff is entitled to such damages, they are limited by statute to $350,-000.00. Defendant's first argument on this point is that Plaintiff may not recover punitive damages in this action because it is essentially an action for breach of contract for which punitive damages are unavailable. *See Kamlar Corp. v. Haley,* 224 Va. 699, 705, 299 S.E.2d 514 (1983). The Virginia Supreme Court, in *Kamlar,* held that punitive damages are not recoverable in a breach of contract action. *Id.* The court plainly stated, however, that punitive damages are re-coverable if the plaintiff proves that the defendant committed an independent tort. *Id.,* 224 Va. at 707, 299 S.E.2d 514. In this case, Plaintiff asserts both breach of contract and fraud. Although Plaintiff, as a matter of law, cannot recover punitive damages on its breach of contract count, it may be entitled to punitive damages on its fraud count.

Defendant is correct, however, in its observation that Plaintiff's award of punitive damages would be limited by statute to $350,-000.00. Va.Code Ann. § 8.01–38.1. Plaintiff raises a constitutional challenge to this statute, however, the Fourth Circuit has already determined that the statute does not violate the due process guarantees of the Federal and Virginia Constitutions. *Wackenhut Applied Technologies Center, Inc. v. Sygnetron Protection Systems, Inc.,* 979 F.2d 980, 985 (4th Cir.1992).

### III.  CONCLUSION

Plaintiff alleges sufficient facts in its amended complaint for the doctrine of equitable estoppel to bar Defendant's statute of frauds defense. Plaintiff is granted leave to amend its complaint, however, so that it may state this theory more specifically. Plaintiff also alleges facts which, if true, would prove the existence of an enforceable contract between the parties supported by valuable consideration on both sides.

Plaintiff has satisfied the requirements of Rule 9(b) of the Federal Rules of Civil Procedure by pleading the facts of its fraud count with particularity. It has likewise pled all the required elements of that claim, including the misrepresentation of a past or present fact. Defendant is not protected by the economic loss rule because Plaintiff alleges both the breach of a contractual duty and the breach of a duty imposed by the law of tort.

Finally, Plaintiff's prayer for punitive damages may go forward on its fraud count. Any punitive damages award, however, is limited by statute to $350,000.00.

It is so ORDERED.