ALLAPATTAH SERVICES,
INC., et al., Plaintiffs,

v.

EXXON CORPORATION, Defendant.

No. 91–0986–Civ.

United States District Court,
S.D. Florida.

July 20, 1999.

Eugene Stearns, Miami, FL, Sidney Pertnoy, Gerald Bowen, McLean, Virginia, for plaintiffs.

Larry Stewart, Miami, FL, Robert Abrams, Robert Brookheiser, Stuart Harris, Darren B. Bernhard, Robert Wallis, Houston, Texas, for defendant.

## ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO ASSERT CLAIM FOR PUNITIVE DAMAGES

GOLD, District Judge.

THIS CAUSE is before the Court upon Plaintiffs' Motion for Leave to Assert Claim for Punitive Damages Against Defendant Exxon Corporation [D.E. # 1016]. Plaintiffs seek to recover punitive damages, alleging that Exxon tortiously and oppressively breached its contracts with Plaintiffs, substantiating punitive relief which is purportedly available under the laws of twenty-three of the thirty-six jurisdictions implicated in this diversity action. Having carefully considered the arguments of the parties, the relevant portions of the record and prior positions asserted by

Plaintiffs, and having reviewed and applied the relevant law, the Court concludes that punitive damages are not appropriate or timely under the circumstances giving rise to Plaintiffs' claims, and therefore, should be denied.

## I. Discussion and Analysis

Although Plaintiffs acknowledge that damages for breaches of a contract are generally limited to those that equate to the benefit of the bargain intended to be realized under the terms of the contract, or, in other words, that which the non-breaching party would have received had the contract been performed, Plaintiffs argue that the majority of the states' laws applicable to many of the Plaintiffs' contract claims recognize a more liberal standard, leaning toward awards of punitive damages on breaches of contractual obligations. In support of their argument, Plaintiffs cited to several cases which are distinguishable from the facts underlying the case before the Court. Significantly, rather than relying on cases involving contractual claims predicated on Article 2 of the Uniform Commercial Code, which Plaintiffs have repeatedly contended is the applicable law, Plaintiffs rely on the Restatement (Second) on Contracts to support their demand for punitive damages.

Exxon opposes Plaintiffs' attempt to interject punitive elements in the absence of any tort claims. Additionally, Exxon argues that Plaintiffs should be precluded from adding a claim for punitive damages so close to trial, because not giving Exxon a corresponding benefit of conducting necessary discovery thereon would severely prejudice Exxon in its defense of such a claim. Exxon points out that the various jurisdictions apply differing standards of proof, which will likely require numerous separate trials and individualized jury instructions, undermining the propriety of class certification.

## A. General Contract Principles Regarding Punitive Damages

The underlying purpose of damages in actions premised on a breach of contract is to place the non-breaching party in the same position it would have occupied if the contract had not been breached. *See Walsh v. Ford Motor Co.*, 627 F.Supp. 1519, 1523 (D.D.C.1986) (citing 5A Corbin, *Corbin on Contracts* § 922, at 5 (1964)); *Mortgage Finance, Inc. v. Podleski*, 742 P.2d 900, 902 (Colo.1987) (breach of contract remedies serve only to provide compensation for loss, not to punish the wrongdoer). Recognizing this central purpose, courts have uniformly rejected requests for punitive damages for mere breach of contract, regardless of the breaching party's conduct or motives. *See id.* Thus, well established principles of contract law dictate that punitive damages are generally not available for a breach of contract claim unless the defendant's conduct in breaching the contract also violated a noncontractual legal duty, thereby constituting a tort. *See* Restatement (Second) of Contracts § 355 (1981) [1]; *see also Continental Nat'l Bank v. Evans*, 107 Ariz. 378, 489 P.2d 15, 19 (1971); *Williams v. Speedster, Inc.*, 175 Colo. 73, 485 P.2d 728, 730 (1971); *Graham v. Turner*, 472 S.W.2d 831, 839 (Tex.App.Ct.1971). Even under the common law, tort remedies are not awarded in a contract dispute absent conduct which separately and independently substantiates the commission of a tort. *See id.; see also Vanwyk Textile Sys., B.V. v. Zimmer Machinery America, Inc.*, 994

---

1. The Restatement specifically provides that: "Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." Restatement (Second) of Contracts § 355. As commentary, the restatement expresses that "the purposes of awarding contract damages is to compensate the injured party." *Id.*

§ 355, cmt. a. It goes on to reiterate that "the purpose of awarding damages is still compensation and not punishment, and punitive damages are not appropriate. In exceptional instances, departures have been made from this general policy ... notably in situations involving consumer transactions or arising under insurance policies." *Id.*

F.Supp. 350, 362 (W.D.N.C.1997) ("To state a claim in tort, a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract."). "Whether an action is characterized as one in tort or on contract is determined by the nature of the complaint, not by the form of the pleadings, and consideration must be given to the facts which constitute the cause of action." *Thomas v. Countryside of Hastings, Inc.,* 246 Neb. 907, 524 N.W.2d 311, 313 (1994).

■ Notably, the breach of a duty is an element in both contractual and tort causes of action. *See Splitt v. Deltona Corp.,* 662 F.2d 1142, 1145 (5th Cir.1981). The distinction is that "duties involved in [tort actions] are raised by law and social policy and owed to an entire class of persons .... [while] [c]ontractual duties are created by the contract terms and [are] owed to the parties thereto." *Id.*

■ Not only are intentional breaches exempt from punitive claims, they are sometimes encouraged. "The law has long recognized the view that a contracting party has the option to breach a contract and pay damages if it is more efficient to do so." *L.L. Cole & Son, Inc. v. Hickman,* 282 Ark. 6, 665 S.W.2d 278, 280 (1984) (citing Holmes, "The Path of the Law" in *Collected Legal Papers* 167, 175 (1920)).[2] The logical result of this theory is a "limitation of breach of contract damage exposure to losses contemplated by the contracting parties, and for which a defendant 'at least tacitly agreed to assume responsibility.'" *Delta Rice Mill, Inc. v. General Foods Corp.,* 763 F.2d 1001, 1006 (8th Cir. 1985) (quoting *Morrow v. First Nat'l Bank of Hot Springs,* 261 Ark. 568, 550 S.W.2d 429, 430 (1977)).

This acceptance of intentional, efficient breaches has been uniformly adopted among the jurisdictions. *See, e.g., Thyssen, Inc. v. SS Fortune Star,* 777 F.2d 57, 63 (2d Cir.1985) ("Breaches of contract that are in fact efficient and wealth-enhancing should be encouraged, and ...

such 'efficient breaches' occur when the breaching party will still profit after compensating the other party for its 'expectation interest.' The addition of punitive damages to traditional contract remedies would prevent many such beneficial actions from being taken."); *Reiver v. Murdoch & Walsh, P.A.,* 625 F.Supp. 998, 1015 (D.Del. 1985) ("some breaches may be intentional and ... efficient [ ] when the payment of damages would be less costly than performance ... that fact alone does not entitle a plaintiff to seek punitive damages unless the intentional breach is similar in character to an intentional tort."); *Harris v. Atlantic Richfield Co.,* 14 Cal.App.4th 70, 17 Cal.Rptr.2d 649, 653 (1993) ("The traditional goal of contract remedies is compensation of the promisee for the loss resulting from the breach, not compulsion of the promisor to perform his promises." Therefore, "willful" breaches have not been distinguished from other breaches. The restrictions on contract remedies serve purposes not found in tort law. They protect the parties' freedom to bargain over special risks and they promote contract formation by limiting liability to the value of the promise. This encourages efficient breaches, resulting in "increased production of goods and services at lower cost to society.") (internal citations omitted); *Kutzin v. Pirnie,* 124 N.J. 500, 591 A.2d 932, 941 (1991) ("The approach that we adopt is suggested to have the added benefit of promoting economic efficiency: penalties deter 'efficient' breaches of contract 'by making the cost of the breach to the contract breaker greater than the cost of the breach to the victim.' ") (quoting Posner, *Economic Analysis of Law* § 4.10 (3d ed.1986)).

■ In sum, in the normal commercial situation, damages for breach of contract are limited to the pecuniary loss sustained, since the damage is usually financial, susceptible of accurate estimation, and the wrong suffered by the plaintiff is the same,

---

**2.** Justice Homes articulated that "[t]he duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it—and nothing else."

regardless of the defendant's motive. *See Kewin v. Massachusetts Mut. Life Ins. Co.,* 409 Mich. 401, 295 N.W.2d 50 (1980); *J.J. White, Inc. v. Metropolitan Merchandise Mart, Inc.,* 107 A.2d 892 (Del.Super.1954); *Smyth v. Fleischmann,* 214 S.C. 263, 52 S.E.2d 199 (1949). Although this is the general rule, courts have, nevertheless carved out exceptions, which are not applicable to the instant contractual dispute.[3]

## B. Punitive Damages Under the UCC

For the sale of goods, remedies for breach of contract are addressed in UCC § 1–106, which provides:

> The remedies provided by the Act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but *neither consequential or special nor penal damages may be had except as specifically provided in this Act or by other rule of law.*

UCC § 106(1) (emphasis added). While consistently relying on UCC principles of law throughout this litigation, Plaintiffs now seek to utilize the common contract laws of the various states to obtain punitive relief. Since various states permit recovery of punitive damages for independently tortious conduct, Plaintiffs argue that Exxon's intentional and willful breach of its good faith obligation supports a claim for punitive damages. In essence, Plaintiffs aver that Exxon's willful breach of the covenant of good faith, implied in contracts governed by the UCC, constitutes an independent tort for which punitive damages are recoverable. The Court does not

agree with Plaintiffs' assessment of the law.

As articulated in prior orders of this Court, the Uniform Commercial Code (the "UCC") imposes a duty of good faith and fair dealing on all contracts governed thereunder. *See* UCC § 1–203 ("Every contract or duty within this Act imposes an obligation of good faith in its performance and enforcement."). Every state in the union, except Louisiana, which has codified a good faith obligation similar to that imposed by the UCC, has enacted statutes adopting the UCC. *See Pennzoil Co. v. Federal Energy Regulatory Comm'n,* 789 F.2d 1128, 1142 (5th Cir.1986). However, Plaintiffs have not called attention to, nor can the Court find, a provision of the UCC that specifically permits punitive damages in circumstances similar to the instant case.

Case law interpreting the UCC in the context of the implied duty of good faith performance expressly discounts Plaintiffs' argument that a breach of a contractual covenant of good faith can be treated as an independent tort. *See, e.g., Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A.,* 251 Va. 28, 466 S.E.2d 382, 385 (1996) (a breach of the obligation of good faith created by UCC § 1–203 does not amount to an independent tort, but rather only gives rise to a claim for breach of contract). The Official Comment to § 1–203 disclaims any provision of an additional cause of action for failure to act in good faith. *See* UCC § 1–203, cmt. ("This section does not support an independent cause of action for failure to perform in good faith."); *see also Duquesne Light Co.*

---

**3.** For instance, courts have most commonly awarded tort damages for a breach of the duty of good faith in cases involving first-party and third-party insurance claims. Many courts have fashioned a tort of bad faith in certain narrowly defined situations, such as when a liability insurer violates its duty to defend its insured or to settle a claim within the policy limits. *See, e.g., Morgan v. American Family Life Assur. Co. of Columbus,* 559 F.Supp. 477, 481 (W.D.Va.1983); *Phillips v. Aetna Life Ins. Co.,* 473 F.Supp. 984, 988–89

(D.Vt.1979); *Kooyman v. Farm Bureau Ins. Co.,* 315 N.W.2d 30 (Iowa 1982); *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032, 1040 (1973). Plaintiffs' survey of state law cites to several cases involving bad faith breach of contract claims derived from a obligations under insurance policies. Several states have enacted statutes providing punitive relief for an insurer's bad faith. *See, e.g.,* Ark.Stat. § 66–3228; Fla.Stat. § 624.155(4); Tex.Ins.Code art. 3.62.

*v. Westinghouse Elec. Corp.,* 66 F.3d 604, 617 (3d Cir.1995) (good faith is an interpretive tool to determine the parties' justified expectations, and is not to be used for enforcement of "an independent duty divorced from the specific clauses of the contract.").

■ Thus, the UCC itself does not allow punishment for bad faith conduct that breaches the covenant of good faith, thereby breaching the underlying contract. Absent an independent tort, which Plaintiffs have not identified, punitive damages under the UCC are not available, unless Plaintiffs otherwise demonstrate that they would be allowed "by other rule of law." UCC § 1–106.

### C. Punitive Damages for Breach of Contract Under State Common Law

Plaintiffs have also consistently relied on the UCC to support their position that class certification "is superior to other available methods for the fair and efficient adjudication of this controversy because it will avoid multiplicity of litigation and will enhance judicial economy." First Amended Complaint, at ¶ 118. Nevertheless, they now seek to invoke the common law principles of various states to bolster an argument that Exxon's conduct rose to the level warranting punitive damages.

■ While Plaintiffs correctly point out that various states permit punitive damages when a breach of contract is also found to constitute independently tortious conduct, the variety of approaches to punitive damages among the states indicates less consensus than Plaintiffs admit. *See, e.g., Feinstein v. Firestone Tire & Rubber Co.,* 535 F.Supp. 595, 605 n. 14 (S.D.N.Y. 1982) (noting that "the doctrine of punitive damages takes different forms, and requires different showings, in different states."). Notwithstanding some jurisdictional variation, the state laws still preclude punitive damages absent an affirmative showing of the commission of a tort independent of any obligation under the contract. *See, e.g., Atchison Casting Corp.*

*v. Dofasco, Inc.,* 889 F.Supp. 1445, 1461 (D.Kan.1995) ("The general rule in Kansas and elsewhere is that the existence of a contract relationship bars the assertion of tort claims covering the same subject matter governed by the contract."); *Foreign Mission Bd. v. Wade,* 242 Va. 234, 409 S.E.2d 144, 148 (1991) (a tort claim arising out of a contractual agreement may only stand as an independent claim where "the duty tortiously or negligently breached [is] a common law duty, not one existing between the parties solely by virtue of the contract."); *Kamlar Corp. v. Haley,* 224 Va. 699, 299 S.E.2d 514, 518 (1983) (punitive damages in an action for breach of contract are only appropriate where there is "proof of an independent, wilful tort, beyond the mere breach of a duty imposed by contract."). The purpose of the independent tort exception to the rule barring punitive damages in contract cases is to separate mere wilful breaches of contract, which require no more than an unwilling breach to make the plaintiff whole, and other wanton or malicious acts that cause a distinct injury and merit the deterrent of punitive damages. *See Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm,* 962 F.2d 628, 639 (7th Cir.1992). Thus, a general rule allowing tort damages whenever a court perceives some amorphous quality such as "bad faith" invites uncertainty and inhibits commerce without a counterbalancing economic benefit. *See id.*

■ An overview of state law, on which Plaintiffs rely to addend their claim for punitive damages convinces the Court that Plaintiffs cannot be awarded punitive damages for Exxon's alleged breach of its Sales Agreement with its dealers. For example, in an action by an automotive oil change and lubrication shop franchisor against its motor oil supplier for tortious interference with contract, the Third Circuit, construing a contract under New Jersey law, held that the supplier did not breach a duty independent of that created by the contract, since the supply agree-

ment did not create a fiduciary relationship between the parties. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1194 (3d Cir.1993); *see also W.A. Wright, Inc. v. KDI Sylvan Pools, Inc.*, 746 F.2d 215, 217 (3d Cir.1984) (under New Jersey law, there is no exception to the rule against awarding punitive damages in breach of contract actions).

Applying North Carolina law to an action by a service station operator against an oil company which had terminated its distribution agreement with the station operator, the Fourth Circuit Court of Appeals found that the plaintiff's allegations of fraudulent inducement, negligence, and gross negligence based on the oil company's creation of impediments to the plaintiff's service and repair bays, were not torts independent of the contract. *See Strum v. Exxon Co., U.S.A.*, 15 F.3d 327, 328–30 (4th Cir.1994). Rather, the court held that the plaintiff's redress, if any, lay in contract law, and concluded that none of the plaintiff's counts alleged viable independent tort claims, because the oil company's mere failure to carry out its contractual promise to remove underground storage tanks within three days did not support a fraud action. *See id.*

A California appellate court reversed a trial court that had awarded punitive damages based on allegations that the defendant's acts constituted a tortious breach of the implied covenant of good faith. *See Quigley v. Pet, Inc.*, 208 Cal.Rptr. 394, 400–01 (1984). The court went on to add that tort damages are available for a breach of contract *only if* the breaching

party denies in bad faith the existence of the contract. *See id.*

The standard for allowing punitive damages claims under New York law is even more stringent. Under this standard, unless Plaintiffs can show that Exxon wantonly defrauded *the public,* a claim for punitive damages in a breach of contract suit cannot stand. *See, e.g., Avnet, Inc. v. American Motorists Ins. Co.*, 684 F.Supp. 814, 815 (S.D.N.Y.1988).

The law in Florida is not significantly distinguishable from that stated by the authorities in other jurisdictions. *See Griffith v. Shamrock Village, Inc.*, 94 So.2d 854, 858 (Fla.1957) (the general rule that punitive damages are not to be awarded in a contract action has long been the Florida rule). Moreover, Florida courts, as well as those in other jurisdictions, recognize an economic loss rule, which bars tort recovery on claims brought for breach of contract. A trilogy of Florida Supreme Court cases have set the parameters of the economic loss rule. *See, e.g., HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238 (Fla.1996); *Casa Clara Condominium Ass'n v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244 (Fla.1993); *AFM Corp. v. Southern Bell Telephone & Telegraph Co.*, 515 So.2d 180 (Fla.1987).[4] These cases demonstrate the tendency of Florida courts to apply the economic loss rule broadly to bar tort actions for economic losses when the underlying claims derived from a contractual relationship.[5]

The principle underlying the economic loss rule prevents recovery in tort for risks

---

**4.** Recently, the Florida Supreme Court issued an opinion clarifying the scope of the economic loss rule as applied to Florida causes of action. *See Moransais v. Heathman,* —— So.2d ——, 1999 WL 462629 (Fla. July 1, 1999). Although the issue decided related to the propriety of tort claims for professional services performed pursuant to a contract between the parties, an issue not relevant to the instant action, the court reiterated its prior rulings barring tort claims based on a contractual relationship except in enumerated circumstances, such as when damages claimed are not purely economic losses and

where there is damage to property or the person not covered by the contract. *See id.* at ——, 1999 WL 462629, at *7.

**5.** The economic loss rule holds that tort actions for purely economic damages will not lie absent accompanying injury or property damage. *See AFM Corp.*, 515 So.2d at 181–82. The Florida Supreme Court has repeatedly clarified that if the facts surrounding the breach of contract and tort claims are "interwoven," the economic loss rule applies to preclude recovery of tort damages. *See HTP, Ltd.*, 685 So.2d at 1239.

that should have been allocated in a contract. *See Motorcity of Jacksonville, Ltd. v. Southeast Bank, N.A.,* 83 F.3d 1317, 1343 (11th Cir.1996), *vacated on other grounds, sub nom., Hess v. Federal Deposit Ins. Co.,* 519 U.S. 1087, 117 S.Ct. 760, 136 L.Ed.2d 708 (1997) ("parties who have allocated risks among themselves by contract should not be permitted to ignore their bargain after incurring a loss involving the subject matter of the contract."); *see also Tidewater Beverage Services v. Coca Cola Co., Inc.,* 907 F.Supp. 943, 947–48 (E.D.Va.1995) ("if the defendant breaches a duty owed to the plaintiff only through a contractual agreement, the plaintiff may not recover purely economic losses in a related tort action against the defendant."). The practical effect is not "to burden society as a whole with the losses of one who has failed to bargain for adequate contractual remedies." *Airport Rent–A–Car, Inc. v. Prevost Car Inc.,* 660 So.2d 628, 630 (Fla.1995). "Florida [does] not create a duty in tort to permit recovery of economic losses where the litigants have allocated the various risks of their bargain by contract." *Strickland–Collins Constr. v. Barnett Bank of Naples,* 545 So.2d 476, 477 (Fla. 2d DCA 1989).

The Court need not belabor the point further. It is clear that, based on the UCC, as well as the common law of the various states, a breach of the implied covenant of good faith, no matter the degree of intent involved, is not a tort independent of the obligations required by the contract.[6]

The gravamen of Plaintiffs' complaint, as to the only remaining count, is that Exxon breached its contract with Plaintiffs by failing to offset the wholesale price of its gasoline to its dealers by an amount which was, on average, equal to the three percent credit card processing charge. This, according to Plaintiffs, was a breach of Exxon's obligation to fix the open price term in the Sales Agreement in good faith and as allegedly promised. As alleged by Plaintiffs, these claims do not rise to the level of independently tortious conduct such that Plaintiffs have stated a claim separate from their breach of contract claim. Plaintiffs' own admission undermines the existence of an independent tort: "The Dealers do not allege a new cause of action but only seek to add to the kind of relief sought." Plaintiffs' Motion for Leave to Assert Claim for Punitive Damages, at 28. Accordingly, Plaintiffs are not entitled to punitive damages.

### D. Plaintiffs' Request to Amend Is Untimely

Even if the Court were to find that Plaintiffs' claims substantiated an independent cause of action in tort, Plaintiffs' request to amend the complaint to include a claim for punitive damages must be denied. Plaintiffs wish to include a new paragraph to allege: "Exxon's breach of the contract as alleged herein was tortious, wilful, wanton, outrageous, oppressive and/or in reckless disregard of the rights of another."

Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave [to amend a party's pleading] shall be freely given when justice so requires." The decision whether to grant leave to amend is within the sound discretion of the trial court. *See Jameson v. Arrow Co.,* 75 F.3d 1528, 1535 (11th Cir.1996) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct.

---

**6.** *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 54, 111 S.Ct. 2123, 2137–38, 115 L.Ed.2d 27 (1991) (Louisiana law does not permit punitive damages for breach of contract, "even when a party has acted in bad faith in breaching the agreement"); *Kahal v. J.W. Wilson & Assoc., Inc.,* 673 F.2d 547, 548 (D.C.Cir.1982) (punitive damages were not recoverable simply because the defendant breached a contract in bad faith); *Davis Cattle Co. v. Great Western Sugar Co.,* 393 F.Supp. 1165, 1181 (D.Colo.1975) (punitive damages were unavailable to a plaintiff's claims that the defendant breached an implied contractual duty to deal in good faith in determining the highest practicable price to be paid for sugar beets); *Barry v. Posi–Seal Intern., Inc.,* 40 Conn.App. 577, 672 A.2d 514, 519 (1996) (punitive damages were not available for a breach premised on the implied covenant of good faith).

**1334**

227, 9 L.Ed.2d 222 (1962)). The Supreme Court has defined the parameters of Rule 15(a):

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Jameson,* 75 F.3d at 1535 (quoting *Foman,* 371 U.S. at 182, 83 S.Ct. 227). If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, the plaintiff ought to be afforded an opportunity to test his claim on the merits. *Hargett v. Valley Federal Sav. Bank,* 60 F.3d 754, 761 (11th Cir.1995). However, courts should not allow an amendment to include punitive damages in a suit brought for breach of contract when malice or fraud are alleged merely to support the punitive damages claim. *See Okland Oil Co. v. Conoco Inc.,* 144 F.3d 1308, 1315 (10th Cir.1998).

In the case at bar, Plaintiffs contend that they are entitled to amend their complaint on the basis of the liberal amendment policy of the Federal Rules of Civil Procedure embodied in Rule 15(a). Plaintiffs further assert that the newly alleged claim for punitive damages arise from the same factual predicate as their breach of contract claim, obviating the need for any additional discovery and removing any potential prejudice to Exxon. Exxon responds persuasively that, although Plaintiffs' punitive damages claim may arise from the same factual events, such an amendment would require additional discovery to test the sufficiency of the claim and to prepare a defense thereto.

Exxon has unequivocally stated that, should Plaintiffs' amendment be allowed, it would need to conduct further discovery. Although Plaintiffs contend otherwise, the Court is persuaded that amendment of the complaint to include additional state tort claims supporting a claim for punitive damages would necessitate reopening discovery, necessarily causing significant delay in these proceedings and substantial undue prejudice to Exxon. Thus, Plaintiffs' request to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a) shall be denied.

## II. Conclusion

▮ In the typical contract case, such as the one before the Court, "punitive damages are inappropriate and counterproductive" in light of contract law favoring the reliance on promises freely negotiated. *See Ennen v. Public Service Mut. Ins. Co.,* 774 F.2d 321, 326 (8th Cir.1985) (citation omitted). The use of punitive damages as legal compulsion to perform contractual obligations "would tend to substitute the coercive power of the courts for the freedom of the marketplace." *Id.* Such an undesirable result was not contemplated by the UCC and shall not be adopted by this Court. Moreover, because the Court finds that, should they prevail, Plaintiffs will be adequately compensated by a damage award representing their expectation interest provided under traditional contract law, Plaintiffs cannot recover punitive damages. *See E.I. DuPont de Nemours & Co. v. Pressman,* 679 A.2d 436, 445 (Del.1996).

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Leave to Assert Claim for Punitive Damages Against Defendant Exxon Corporation [D.E. # 1016] is DENIED.

DONE AND ORDERED.